UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CANDA CLARK,

      Plaintiff,

v.

WAL-MART STORES, INC.,

      Defendant.

Case No. 2:16-cv-463
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Chelsey M. Vascura

## **OPINION AND ORDER**

While shopping at Wal-Mart, a box containing a cast iron griddle fell on Plaintiff Canda Clark's foot and broke three of her toes. She brought a negligence claim under Ohio law that was later removed to this Court. Defendant Wal-Mart Stores, Inc. has now moved for summary judgment. For the following reasons, that Motion (ECF No. 24) is **DENIED**.

### I.

On May 2, 2014, Plaintiff Canda Clark and her boyfriend, Michael Church, went to Wal-Mart to buy two basketball hoop sets. (Clark Dep. at 17–20, ECF No. 25-1.) When they arrived, Clark and Church retrieved a shopping cart and started walking toward the store's sporting goods section. (*Id.* at 20.) As they walked down the camping supply aisle, Clark was looking at the tents to her left. (*Id.* at 21.) Clark suddenly stopped when she noticed that something had landed on her foot. (*Id.*) Clark looked down and saw a long, thin box on her right foot. (*See id.* at 24–25.) The box was heavy, and Clark could not lift it off her foot, so Church moved it for her. (*Id.* at 22, 25.) Church informed a Wal-Mart employee about the incident, and Clark was eventually provided an electric cart to sit on while she completed an accident report. (*Id.* at 22–23.)

While attending to her foot, Clark realized that the box that had fallen on her foot

contained a cast iron griddle. (Clark Dep. at 25.) An employee had moved the fallen box; Clark, however, saw that other griddle boxes were situated on an elbow-height shelf that she was walking by when the box fell. (*See id.* at 23, 25, 31.) Clark noticed that one griddle box was extending beyond the front edge of the shelf. (*See id.* at 23, 25.) Behind that box, deeper on the shelf, were several stacked griddle boxes. (*See id.* at 32–33, Ex. 1.)

Photographs submitted by the parties show the griddle boxes on the shelf after the incident. (Photos at PageID 214, 216–22, ECF Nos. 39-2, 39-3.) The box that fell on Clark is not included in the photographs. (*See* Clark Dep. at 23.) The photographs show a stack of griddle boxes at the rear of the shelf and one griddle box sitting in front of the stack. (Photos at PageID 214, 216–22.) At least a third of the length of the front box extends beyond the shelf's front edge. (*Id.*) The shelf is a light tan color; the floor is white; and the stacked griddle boxes are yellow on their sides. (*Id.*) The box extending beyond the shelf's front edge is also yellow on its sides; the top of the box features an image of a cast iron griddle. (*Id.*)

Some of the photographs depict a shopping cart handle in contact with the griddle box protruding from the shelf. (Photos at PageID 214, 218–19, 221–22.) A Wal-Mart employee who responded to the incident staged these photographs. (*See* Resp. at 2–3, 11, ECF No. 39; Wentzel Dep. at 16–17, 20, ECF No. 40-2.) Clark speculates that this staging depicts how the incident occurred: her shopping cart's handle struck a griddle box as she walked down the aisle, causing the box to fall on her foot. (*See* Clark Dep. at 29; Resp. at 2–3, 10–11; Wentzel Dep. at 16.)

Clark acknowledged in her deposition that if she had looked to her right as she walked down the aisle there was nothing that would have blocked her view of the griddle boxes. (*See* Clark Dep. at 26–29.) There was nothing in Clark's shopping cart, and the store was well lit. (*Id.*

2

at 29, 34.) Clark also acknowledged that the box that fell was visible after it landed on her foot. (*See id.* at 24–25.)

When the griddle box landed on her right foot, Clark felt a sharp pain. (Clark Dep. at 37–38.) Clark's foot continued to hurt, and it later swelled and bruised. (*See id.* at 42.) Clark saw her doctor several days later: three of her toes were broken. (*Id.* at 40, 43.) Because of her broken toes, Clark started walking on her heel and the side of her foot; this altered gait aggravated an existing condition with her right knee. (*See id.* at 53, 65.) Clark has undergone two surgeries related to her broken toes, and she has had her right knee replaced. (*Id.* at 45–53.)

Clark brought a state-law negligence claim against Wal-Mart on April 27, 2016, in the Delaware County Common Pleas Court. (Compl. at 1–3, ECF No. 2.) Wal-Mart removed the action to this Court on May 24, 2016, on the basis of diversity jurisdiction. (Notice of Removal at 1–2, ECF No. 1.) Wal-Mart now moves for summary judgment. (Mot. at 1, ECF No. 24.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). When the moving party has carried this burden, the nonmoving party must then set forth specific facts showing that there is a genuine issue for trial. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).

"After the parties have presented their evidence, 'the judge's function is not himself to

3

weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Moldowan*, 578 F.3d at 374 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In evaluating the evidence, the Court must draw all inferences in the light most favorable to the nonmoving party. *Id.* The nonmoving party, however, cannot establish a genuine issue for trial by producing a mere scintilla of evidence in support of its position. *Anderson*, 477 U.S. at 251; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (showing the existence of "some metaphysical doubt as to the material facts" does not create a genuine issue for trial). A genuine issue for trial exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**A.     Negligence**

To prevail on a negligence claim under Ohio law, a plaintiff must show the existence of a duty, the breach of that duty, and an injury proximately caused by the breach. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 693 N.E.2d 271, 274 (Ohio 1998). Because Clark purportedly cannot establish any of these elements, Wal-Mart requests summary judgment.

**1.     Duty**

Wal-Mart argues that it did not owe a duty to Clark because, as a matter of law, the griddle box was an open and obvious hazard. (*See* Mot. at 4–7, ECF No. 24.) The Court disagrees.

In general, the legal status of a person (i.e., trespasser, licensee, or invitee) injured on real property determines the scope and extent of the duty owed to the injured person by the owner or occupier of the property. *Benton v. Cracker Barrel Old Country Store, Inc.*, 10th Dist. Franklin No. 02AP-1211, 2003-Ohio-2890, ¶ 12. Here, given that Clark entered the store, "by invitation,

4

express or implied, for some purpose which [was] beneficial to the owner," Clark was an invitee at Wal-Mart. *See Light v. Ohio Univ.*, 502 N.E.2d 611, 613 (Ohio 1986).

A shopkeeper owes an invitee a duty of ordinary care in maintaining the premises in a reasonably safe condition so that the invitee is not unnecessarily and unreasonably exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474, 475 (Ohio 1985); *McConnell v. Margello*, 10th Dist. Franklin No. 06AP-1235, 2007-Ohio-4860, ¶ 9. A shopkeeper is not, however, an insurer of an invitee's safety and owes no duty to protect an invitee from open and obvious hazards on the property. *See Paschal*, 480 N.E.2d at 475. Ohio courts reason that, given the open and obvious nature of the hazard, shopkeepers may reasonably expect their invitees to discover the hazard and take appropriate measures to protect themselves. *See Simmers v. Bentley Constr. Co.*, 597 N.E.2d 504, 506 (Ohio 1992). Whether a hazard is open and obvious is a threshold issue because it is determinative of the shopkeeper's duty. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St. 3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 13. A plaintiff cannot prevail on a negligence claim when the hazard at issue is open and obvious, as a shopkeeper owes no duty to invitees regarding such hazards. *See id.* ¶ 5.

An open and obvious hazard is one that is neither hidden nor concealed from view and is discoverable through ordinary inspection. *Parsons v. Lawson Co.*, 566 N.E.2d 698, 700 (Ohio Ct. App. 1989). The standard is objective, so the plaintiff does not have to actually observe the hazard for it to be considered open and obvious. *See Armstrong*, 2003-Ohio-2573, ¶ 16; *McConnell*, 2007-Ohio-4860, ¶ 10; *Lykins v. Fun Spot Trampolines*, 172 Ohio App. 3d 226, 2007-Ohio-1800, 874 N.E.2d 811, ¶ 24 (12th Dist.). If "an invitee exercising ordinary care under the circumstances would have seen and been able to guard himself against the condition," then the hazardous condition is open and obvious. *McConnell*, 2007-Ohio-4860, ¶ 10.

In determining whether a hazard is open and obvious, Ohio courts consider the existence of attendant circumstances that would distract an invitee and thereby reduce the amount of care an ordinary person would exercise in confronting the hazard. *See McConnell*, 2007-Ohio-4860, ¶ 17; *Briel v. Dollar Gen. Store*, 11th Dist. Ashtabula No. 2007-A-0016, 2007-Ohio-6164, ¶ 38 ("[A]ttendant circumstances are all facts relating to a situation such as time, place, surroundings, and other conditions that would unreasonably increase the typical risk of a harmful result of an event."). Attendant circumstances may create a genuine issue of material fact on whether a hazard was open and obvious and, consequently, on whether the shopkeeper owed a duty to the invitee. *See Carter v. Miles Supermarket*, 8th Dist. Cuyahoga No. 95024, 2010-Ohio-6365, ¶ 18.

Wal-Mart contends that the griddle box was an open and obvious hazard and that Wal-Mart therefore owed no duty to warn Clark about, or protect her from, the griddle box. (Mot. at 4–7.) The box was not hidden, concealed from view, or undiscoverable upon ordinary inspection, Wal-Mart asserts, because the box was bright yellow, at least a foot long, and observed by Clark after it landed on her foot. (*See id.* at 3, 5–6.)

Clark acknowledges that the griddle box may have been visible. (Resp. at 14–15, ECF No. 39.) She argues, however, that the fifteen-pound cast iron griddle contained inside the box was not visible and that the hazard posed by the box was therefore not open and obvious. (*See id.* at 14–16.)

As an initial matter, the Court decides an evidentiary issue. Clark contends that the griddle box was protruding beyond the edge of the elbow-height shelf and fell on her foot when the handle of her shopping cart struck it. (*See* Resp. at 2–3, 10–11; *see also* Clark Dep. at 21–25, 29–31, ECF No. 25-1; Photos at PageID 214, 216–22, ECF Nos. 39-2, 39-3.) Clark did not see the box that fell before it landed on her foot. (Clark Dep. at 24.) But circumstantial evidence

supports Clark's argument. The box landed on her right foot with enough force that it broke three of her toes. (*See id.* at 24–25, 43.) There were griddle boxes on an elbow-height shelf to the right of where Clark was walking when the box fell. (*See id.* at 23, 25, 31.) A stack of boxes was situated at the rear of the shelf. (*See id.* at 32–33, Ex. 1.) And one box, protruding beyond the edge of the shelf, was sitting in front of the stack. (*See id.* at 23, 25.) The photographs show the boxes to Clark's right as they were positioned after the incident. The boxes had been improperly stacked, Clark heard a Wal-Mart employee say. (*Id.* at 23.) Drawing all inferences from this evidence in the light most favorable to Clark, *see Moldowan*, 578 F.3d at 374, the Court accepts for purposes of the Motion for Summary Judgement Clark's assertion that the box was protruding beyond the front edge of the shelf and that it fell when Clark's shopping cart struck it.

The Court moves now to the duty analysis. If a hazard is hidden from view or concealed, it is not open and obvious. *See Tackett v. Wal-Mart Stores East, Inc.*, No. 1:05-cv-560, 2007 WL 2668133, at *4 (S.D. Ohio Sept. 6, 2007); *McConnell*, 2007-Ohio-4860, ¶ 10; *Klauss v. Glassman*, 8th Dist. Cuyahoga No. 84799, 2005-Ohio-1306, ¶ 16; *Benton*, 2003-Ohio-2890, ¶ 15; *Parsons*, 566 N.E.2d at 700. And Ohio courts have consistently held that a shopkeeper has a duty to warn invitees of hidden or latent dangers. *See, e.g., Armstrong*, 2003-Ohio-2573, ¶ 5; *Briel*, 2007-Ohio-6164, ¶ 24; *Zuzan v. Shutrump*, 155 Ohio App. 3d 589, 2003-Ohio-7285, 802 N.E.2d 683, ¶ 6 (7th Dist.); *Sexton v. Wal-Mart Stores, Inc.*, No. 98 CA 2603, 1999 WL 22632, at *4 (Ohio Ct. App. Jan. 14, 1999).

Here, although the griddle box was visible, the griddle itself—the feature of the box that made it hazardous—was not. (*See* Photos at PageID 214, 216–22.) An invitee could avoid a box protruding from a shelf. But the precaution that an invitee exercising ordinary care would take when approaching a precariously situated box weighing, for example, one pound would be

7

different than the precaution the invitee would take when approaching a similarly situated box weighing fifteen pounds. The invitee facing the heavier box would likely leave a wider margin between her and the box and take additional precautions to avoid disturbing the box. An invitee, however, can only take the appropriate precautions if she knows the danger she is confronting. And here, the evidence suggests that the weight of the griddle box and the hazard posed by it was not open and obvious. (*See* Photos at PageID 214, 216–22.) Indeed, Wal-Mart's Developmental Store Manager acknowledged that a customer walking down the aisle probably would not have known the weight and contents of the box when approaching it. (*See* Stone Dep. at 44–45, ECF No. 40-1.)

Wal-Mart avers that Clark cannot point to the griddle—rather than the griddle box—as being the hazard she confronted because in her Complaint she alleged that "her cart struck a display causing a **box** containing an iron cast griddle" to fall on her foot. (Reply at 3, ECF No. 44 (quoting Compl. ¶ 7, ECF No. 2).) Nowhere in this allegation though does Clark assert that the hazard she confronted was simply the griddle box. (*See* Compl. ¶ 7.) Rather, Clark's allegation refers to "a box *containing an iron cast griddle*." (*Id.* (emphasis added).) Read naturally, Clark's allegation implies that it was the "iron cast griddle" contained in the box that injured her foot and was, therefore, the hazard she confronted. (*Id.*)

Alternatively, Wal-Mart avers that if the hazard Clark faced was "<u>only</u> the griddle 'hidden in an inconspicuous box,'" then Clark should have sued the box manufacturer instead of Wal-Mart. (Reply at 3.) Wal-Mart, however, offers no legal basis for the assertion that only the container manufacturer can be held liable for negligence if a product falls on a customer. Nor does Wal-Mart provide authority for the notion that a third-party's potential liability in a negligence case alters the open and obvious analysis.

8

Wal-Mart further contends that even if the griddle, rather than the box, was the hazard Clark faced, the presence of the griddle in the box was open and obvious given that the top of the box featured a picture of a cast iron griddle and had the words "CAST IRON" printed on it. (*See* Reply at 3–4.) This argument lacks merit. Wal-Mart references a photograph taken after the incident of a griddle box protruding from the shelf. (*See id.*) But the box shown in the photograph is not the box that fell on Clark. (*See* Clark Dep. at 23.) And Wal-Mart has not pointed to any evidence establishing that the box that fell on Clark was positioned so that the picture and description would have been visible to someone walking down the aisle. The picture and description, moreover, do not reveal the weight of the box. (*See* Reply at 4.) And, again, even Wal-Mart's Developmental Store Manager acknowledged that a customer walking down the aisle probably would not have known the weight and contents of the box when approaching it. (*See* Stone Dep. at 44–45.)

Lastly, Wal-Mart warns that accepting Clark's argument about the hazard posed by the griddle would "turn the open and obvious doctrine on its head" because under Clark's argument "every object contained [in an opaque box] would be a hazard." (Reply at 3.)

Wal-Mart's focus on whether it was the griddle *or* the griddle box that constituted the hazard confronted by Clark distracts from the reality that the griddle and the box must be viewed as a whole. The griddle box, which was visible, was hazardous largely because it contained a heavy, cast iron griddle, which was not visible. And given the facts of this case, the visibility of the box is not dispositive of whether *the hazard posed by the box* was open and obvious. *Cf. Armstrong*, 2003-Ohio-2573, ¶ 14 ("Where a *danger* is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." (emphasis added)).

Wal-Mart's slippery slope argument is also unfounded. The Court is not adopting a

9

sweeping rule about every box whose contents are hidden from view. The evidence suggests that the griddle box at issue was precariously situated on an elbow-height shelf before it fell; the box fell with such force that it broke three of Clark's toes; the box was heavy enough that Clark could not pick it up without assistance; the griddle was not visible in the box; and the Developmental Store Manager's testimony indicates that a customer walking down the aisle probably would not have known the box's weight and contents when approaching it. (*See* Clark Dep. at 22–23, 29–30, 43; Photos at PageID 214, 216–22; Stone Dep. at 44–45.) Based on these circumstances, the Court simply finds that there is a genuine issue for trial on whether the hazard posed by the griddle box was open and obvious.

In sum, the Court cannot conclude as a matter of law that an invitee exercising ordinary care would have seen and been able to guard herself against the hazard posed by the griddle box. A reasonable jury could conclude that the hazard was not open and obvious, and, consequently, Wal-Mart is not entitled to summary judgment on its open and obvious argument. *See Klauss*, 2005-Ohio-1306, ¶ 18 ("[W]here reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine.").

2. **Breach**

Even if it owed Clark a duty, Wal-Mart argues that it did not breach that duty because it did not create the hazard or have actual or constructive knowledge of the hazard. (*See* Mot. at 8–10, ECF No. 24.) Again, the Court is not persuaded.

An invitee can show that a shopkeeper breached its duty to her by establishing that (1) the shopkeeper was responsible for the hazard, (2) the shopkeeper had actual knowledge of the hazard and failed to warn of or remedy it, or (3) the hazard existed for a sufficient length of time to reasonably justify the inference that the failure to warn of or remedy it was attributable to a

lack of ordinary care. *See Johnson v. Wagner Provision Co.*, 49 N.E.2d 925, 928 (Ohio 1943).

### a. Responsibility for the Hazard

Clark contends that Wal-Mart was responsible for the hazard because it designed and utilized a merchandise schematic that called for boxes containing heavy, cast iron griddles to be displayed in a way that would likely result in restocked boxes protruding beyond the front edge of an elbow-height shelf. (*See* Resp. at 7–9, ECF No. 39.)[1]

Wal-Mart's corporate office creates merchandise schematics that each of the stores follow. (*See* Stone Dep. at 14–15, ECF No. 40-1.) The schematic for the griddle boxes called for the boxes to be displayed on a shelf approximately elbow high with the long end of the box aligned with the edge of the shelf. (*See id.* at 42–43; Schematic at PageID 211–12, ECF No. 39-1.) This schematic created the hazard, Clark avers, because it failed to account for the situation where the griddle boxes are pushed to the rear of the shelf and other griddle boxes are then placed in front of the rear boxes. (*See* Resp. at 7–9.) Given the width of the shelves and the length of the boxes, the boxes in the front would protrude beyond the edge of the shelf. (*See id.*) Wal-Mart knew this situation would likely occur, Clark argues, because it understood that customers regularly move and restock products. (*See* Resp. at 8; Stone Dep. at 23; Wentzel Dep. at 28, ECF No. 40-2.) And according to Clark, Wal-Mart could have prevented this hazardous situation if its schematic had called for the griddle boxes to be placed on a lower shelf or if the schematic had required that a stopper be placed behind the griddle boxes (to prevent them from being pushed to the rear of the shelf). (*See* Resp. at 9.)

---

[1] Wal-Mart suggests that the Court should not consider the schematic in deciding the Motion for Summary Judgment because Clark did not authenticate it. (*See* Reply at 4 n.4, ECF No. 44.) Wal-Mart, however, has provided no reason to suggest that the schematic could not be authenticated. Thus, to the extent that Wal-Mart objects under Federal Rule of Civil Procedure 56(c) to the Court's consideration of the schematic, Wal-Mart's objection fails. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form *that would be admissible* in evidence." (emphasis added)).

11

Wal-Mart insists that it could not have breached a duty to Clark by following the schematic because "the alleged hazard is the griddle box hanging over the shelf—not the griddle box simply being displayed on the shelf." (Reply at 4–5 (footnote omitted).) This argument misses the mark. Clark does not contend that the hazard was the griddle box simply being displayed on the shelf. (*See* Resp. at 7–9.) The griddle box posed a hazard because it extended precariously beyond the edge of an elbow-height shelf. (*See id.* at 8–9.) And the box was in that hazardous position, Clark asserts, because Wal-Mart's schematic failed to account for the likely possibility that griddle boxes would be restocked that way. (*See id.*)

Wal-Mart further contends that it could not have breached a duty to Clark because Clark cannot establish that a Wal-Mart employee—rather than a customer—placed the griddle box on the edge of the shelf. (*See* Reply at 5.) Wal-Mart's argument again misses the mark. Irrespective of whether an employee or a customer placed the griddle box on the edge of the shelf, Wal-Mart could be found responsible for the hazard given that Wal-Mart's schematic failed to account for the likely possibility that the griddle box would be restocked in a hazardous way.

Based on the evidence produced by Clark, a reasonable jury could find Wal-Mart responsible for the griddle box protruding hazardously beyond the front edge of the shelf. Wal-Mart knew that customers regularly move and restock products. (*See* Stone Dep. at 23; Wentzel Dep. at 28.) The schematic designed and utilized by Wal-Mart did not account for that knowledge though. The schematic called for boxes containing heavy, cast iron griddles to be displayed in a way that would likely result in the boxes being improperly restocked—with the boxes protruding hazardously beyond the edge of an elbow-height shelf.

### b. Actual Knowledge of the Hazard

Clark also argues that Wal-Mart had actual knowledge of the hazard and failed to warn of

12

or remedy it. (*See* Resp. at 4 n.4, 10–12, ECF No. 39.)

Wal-Mart employees are trained to "zone" the store as they work. (*See* Stone Dep. at 23–24, ECF No. 40-1; Wentzel Dep. at 27, ECF No. 40-2.) They zone the store by conditioning, straightening, and performing maintenance on displays as they walk through the aisles. (*See* Stone Dep. at 23–24.) If an employee observes a product extending beyond the edge of a shelf, the employee is trained to adjust the product so that it aligns with the edge of the shelf. (*See id.* at 43; Wentzel Dep. at 27.)

Clark's deposition testimony and the photographs submitted by the parties suggest that the griddle box was protruding beyond the front edge of an elbow-height shelf before it fell on Clark's foot. (*See* Clark Dep. at 21–25, 29–31, ECF No. 25-1; Photos at PageID 214, 216–22, ECF Nos. 39-2, 39-3.) And security camera footage shows that Wal-Mart employees walked down the camping supply aisle several times in the hour before the incident occurred. (*See* Sec. Camera Footage (two hours) at 2:29, 2:59, 17:25, 32:04, and 33:50.)

Wal-Mart challenges the sufficiency of Clark's evidence. Noting that Clark did not actually see how the griddle box was situated before it fell and that Clark has testified that she "would have no way of knowing" if a Wal-Mart employee knew, prior to the fall, about where the box was situated, Wal-Mart contends that Clark cannot prove a breach of duty. (Mot. at 10, ECF No. 24; Reply at 6, ECF No. 44 (quoting Clark Dep. at 30).) This argument is unavailing.

To defeat Wal-Mart's Motion for Summary Judgment, Clark does not need to establish that Wal-Mart had actual knowledge of the hazard. *See Moldowan*, 578 F.3d at 374. Clark must simply produce sufficient evidence of Wal-Mart's actual knowledge for the Court to conclude that a reasonable jury could find in her favor on the issue. *See id.* The Court, moreover, must draw all inferences in the light most favorable to Clark when deciding the Motion. *See id.*

Based on Clark's deposition testimony and the photographs submitted by the parties, a reasonable jury could find that the griddle box was protruding beyond the edge of the elbow-height shelf before it fell. (*See* Clark Dep. at 21–25, 29–31; Photos at PageID 214, 216–22.) And based on the security camera footage, a reasonable jury could conclude that a Wal-Mart employee saw the precariously situated griddle box before the incident yet failed to remedy the situation or warn Clark of the hazard. (*See* Sec. Camera Footage (two hours) at 2:29, 2:59, 17:25, 32:04, and 33:50.) The evidence produced by Clark, when viewed in the light most favorable to her, is sufficient for a reasonable jury to conclude that Wal-Mart had actual knowledge of the hazard and failed to warn of or remedy it.

Because Clark has produced sufficient evidence regarding Wal-Mart's alleged breach, the Court turns to proximate causation.

### 3. Proximate Causation

Because Clark's case purportedly relies on speculation, Wal-Mart argues that Clark cannot establish that her injuries were proximately caused by its alleged breach. (*See* Mot. at 11–12, ECF No. 24; Reply at 7–8, ECF No. 44.) Clark speculates about where the box was before it fell, and she speculates about whether a Wal-Mart employee, rather than a customer, improperly stacked the boxes, Wal-Mart contends. (*See* Mot. at 11–12; Reply at 8.) Wal-Mart's argument is not well taken.

Under Ohio law, a breach of duty proximately causes a plaintiff's injury if the injury "is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances." *Mudrich v. Standard Oil Co.*, 90 N.E.2d 859, 863 (Ohio 1950). A defendant does not need to anticipate the plaintiff's injury. *Id.* "It is sufficient that [the defendant's] act is likely to result in an injury to someone." *Id.*

14

An intervening event can break the causal connection between a defendant's act and the plaintiff's resulting injury. *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 653 N.E.2d 661, 670 (Ohio 1995). But an intervening event does not sever the causal connection if the alleged intervening event was reasonably foreseeable to the defendant. *Id.*; *see also Johnson v. Pohlman*, 162 Ohio App. 3d 240, 2005-Ohio-3554, 833 N.E.2d 313, ¶ 30 (8th Dist.). To determine the foreseeability of the intervening event, Ohio courts consider "whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a *new* and *independent* act or cause which intervenes and thereby absolves the original [defendant]." *Queen City Terminals*, 653 N.E.2d at 671 (quoting *Cascone v. Herb Kay Co.*, 451 N.E.2d 815, 819 (Ohio 1983)).

According to Wal-Mart, Clark's claim fails because she speculates about where the griddle box was before it fell. (*See* Mot. at 11–12.) She cites several Ohio court of appeals cases for this proposition. (*See id.* at 10–11.) None of the cases, however, forecloses Clark's claim.

As the Tenth District Court of Appeals explained in one of the cases cited by Wal-Mart, "a claimant may establish proximate cause through circumstantial evidence." *Mills v. Best W. Springdale*, 10th Dist. Franklin No. 08AP-1022, 2009-Ohio-2901, ¶ 20. Circumstantial evidence is sufficient if it "establish[es] with some degree of certainty that the alleged negligent acts caused the injury." *Woodworth v. N.Y. Cent. R.R. Co.*, 80 N.E.2d 142, 145 (Ohio 1948).

The evidence produced by Clark meets this standard. Wal-Mart's merchandise schematic failed to account for the likely possibility that the griddle box would be restocked in a hazardous way. (*Cf.* Stone Dep. at 23, ECF No. 40-1; Wentzel Dep. at 28, ECF No. 40-2.) And the Wal-Mart employees who walked down the camping supply aisle several times in the hour before the incident occurred, (*see* Sec. Camera Footage (two hours) at 2:29, 2:59, 17:25, 32:04, and 33:50),

15

failed to remedy or warn of the hazard posed by the griddle box. This evidence, viewed in conjunction with the Court's determination that a reasonable jury could find that the griddle box was protruding beyond the front edge of the elbow-height shelf before it fell, (*see* Clark Dep. at 21–25, 29–31, ECF No. 25-1; Photos at PageID 214, 216–22, ECF Nos. 39-2, 39-3), establishes with some degree of certainty that Wal-Mart's breach—by its use of the merchandise schematic, the failure of its employees to remedy or warn of the hazard posed by the griddle box, or both—caused Clark's injury.

Wal-Mart also suggests that it could not have proximately caused Clark's injury if a customer, rather than an employee, placed the griddle box in a hazardous position. (*See* Mot. at 11; Reply at 8.) But Wal-Mart knew that customers regularly move and restock products. (*See* Stone Dep. at 23; Wentzel Dep. at 28.) And given the restocking problems created by Wal-Mart's schematic, a reasonable jury could conclude that it was reasonably foreseeable to Wal-Mart that a customer would restock a griddle box so that the box protruded hazardously beyond the front edge of an elbow-height shelf.

Clark, in sum, has produced sufficient evidence to convince a reasonable jury that Wal-Mart proximately caused her injury.

### III.

Wal-Mart's Motion for Summary Judgment (ECF No. 24) is, accordingly, **DENIED**.

**IT IS SO ORDERED.**

3-27-2018
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**